IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJENDRA PARVATANENI, on behalf of the State of California,<br><br>    Plaintiff,<br><br>  v.<br><br>E*TRADE FINANCIAL CORPORATION, and DOES 1-10,<br><br>    Defendants.<br>_____ / | No. C 13-02428 JSW<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION** |

Now before the Court is the motion to dismiss, or in the alternative, compel individual arbitration and stay proceedings filed by Defendant E*Trade Financial Corporation ("E*Trade"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and concludes that the matter is suitable for disposition without oral argument. Accordingly, the hearing set for October 4, 2013 is HEREBY VACATED. For the reasons set forth in the remainder of this Order, Defendant's motion to compel arbitration is GRANTED and the matter is STAYED pending completion of individual arbitration.

**BACKGROUND**

Plaintiff Rajendra Parvataneni ("Mr. Parvataneni") began working for Defendant E*Trade in October 2011. (Declaration of Eric L. Barnum in Support of Defendant E*Trade Financial Corporation's Motion to Dismiss Complaint, or, in the Alternative, Compel Individual Arbitration

and Stay Proceedings ("Barnum Decl.") Ex. H, ¶ 7.) Mr. Parvataneni alleges that he often worked in excess of forty hours per week, but was unable to claim overtime payments. (*Id.* ¶¶ 12-15.) It is undisputed that Mr. Parvataneni signed an arbitration agreement as a condition of his employment. (Plaintiff's Motion to Compel Arbitration and Opposition to Defendant's Motion to Dismiss or Compel Arbitration ("Pl.'s Mot.") at 1.) The arbitration agreement provides, in relevant part:

> In the event of any dispute or claim arising out of or relating to your employment relationship with the Company, this agreement, or the termination of your employment with the Company for any reason . . . you and the Company agree that all such Disputes shall be fully, finally, and exclusively resolved by binding arbitration to the fullest extent permitted by law. The arbitration will be conducted by the American Arbitration Association in Menlo Park, CA or such other location that may be agreed to by you and the Company in writing. . . . You and the Company further agree that if, and only if, this arbitration agreement shall, for any reason, be held invalid or unenforceable, then any Dispute between us shall be resolved by means of a court trial . . . .

(Barnum Decl. Ex. B.)

Mr. Parvataneni brought suit in state court alleging violations of California's Private Attorneys General Act ("PAGA") relating to unpaid overtime hours and E*Trade's alleged failure to maintain adequate timekeeping records. (Barnum Decl. Ex. H.) E*Trade removed the case to federal court. (Barnum Decl. Ex. I.)

E*Trade now moves to dismiss the case, or in the alternative, to stay the case and compel Mr. Parvataneni to individual arbitration.[1] Mr. Parvataneni, in response, asks the Court to compel E*Trade to arbitration on his representative PAGA claims.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

---

[1] The Court notes at the outset that some courts in other jurisdictions have held that PAGA claims are necessarily representative and cannot be brought on an individual basis. *See Urbino v. Orkin Servs. of Cal.*, 882 F. Supp. 2d 1152, 1167 (C.D. Cal. 2011), *vacated* __ F.3d __, 2013 WL 4055615 (9th Cir. Aug. 13, 2013) (vacating because PAGA claims cannot be aggregated to meet the amount in controversy requirement); *Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13–2122 CAS (Cwx), 2013 WL 3233211, at *8 (C.D. Cal. June 25, 2013). However, this District recognizes the existence of individual PAGA claims and therefore the Court does not find these cases persuasive. *See, e.g.*, *Valle v. Lowe's HIW, Inc.*, No. 11-1489-SC, 2012 WL 4466523, at *2, 3 (N.D. Cal. Aug. 30, 2012) (upholding arbitrator's decision to dismiss plaintiff's representative PAGA claims but permitting him to arbitrate his PAGA claims on an individual basis).

2

**ANALYSIS**

**A. Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction implicating interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Neither party here disputes that there is a valid and enforceable arbitration agreement. Rather, the dispute centers on whether Mr. Parvataneni can pursue his claims on a representative basis under PAGA.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 925-26 (1985) (internal quotations omitted).

Finally, notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion"). Thus, as with any contract, an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165,

3

1170 (9th Cir. 2003). Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 388 U.S. at 403-04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

E*Trade moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted due to the arbitration agreement the parties signed. In the alternative, E*Trade asks that the Court compel Mr. Parvataneni to submit his claims to individual arbitration.

Mr. Parvataneni opposes E*Trade's motion on several bases. First, he argues that the arbitration agreement grants him the right to pursue collective arbitration. Second, he argues that, if the arbitration agreement is ambiguous as to his right to pursue collective arbitration, the Court should order E*Trade to arbitrate the matter of whether collective arbitration is available under this agreement. Finally, he argues that, if the arbitration agreement does not include a right to collective arbitration, it is void because it exempts E*Trade from PAGA law enforcement actions. The Court shall address each argument in turn.

**B.      The Arbitration Agreement does not Provide for Collective Arbitration.**

Mr. Parvataneni contends that the arbitration agreement he signed should be broadly construed to include his representative PAGA claims. (Pl.'s Mot. at 5-6.) He bases this argument on the agreement's clause providing that "in the event of any dispute or claim . . . all such [d]isputes shall" be subject to arbitration. (*Id.*) Mr. Parvataneni claims that, because the parties did not expressly preclude collective arbitration, they necessarily included it in the agreement's ambit. (*Id.*)

When a court construes an arbitration agreement, it "must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt*, 489 U.S. at 479). Parties are free to structure their agreements as they see fit; the primary role of the Court in interpreting an arbitration agreement is "to give effect to the intent of the parties." *Id.* at 684. Thus, the Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that

4

1   the party *agreed* to do so." *Id.* (emphasis in original). It is impermissible for the Court to presume
2   the parties agreed to class arbitration simply because an arbitration agreement exists. *Id.* at 685.
3   Therefore, if an arbitration agreement is silent as to whether class arbitration is permitted, it should
4   not be presumed that the parties agreed to submit to class arbitration. *Id.* at 687; *see also id.* at 685
5   ("[C]lass action arbitration changes the nature of arbitration to such a degree that it cannot be
6   presumed the parties consented to it simply by agreeing to submit their disputes to an arbitrator.").

7   Here, the arbitration agreement is silent as to class arbitration. (*See* Barnum Decl. Ex. B.)
8   There is no evidence that the parties considered the issue prior to signing the contract, and no
9   contractual basis for concluding they intended to include class arbitration in the terms of the
10  agreement. *See Stolt-Nielsen*, 559 U.S. at 684. Accordingly, the Court cannot construe this
11  agreement to include class arbitration such as Mr. Parvataneni's representative PAGA claims.

12  Mr. Parvataneni argues that simple exclusion of the issue of class arbitration should not be
13  interpreted as precluding collective claims. (Pl.'s Mot. at 6-7.) He contends that *Stolt-Nielsen* does
14  not control here because the Supreme Court there used "silence" as a term of art meaning the parties
15  "had not reached any agreement on the issue of class arbitration," not simply that the agreement
16  failed to mention the issue. 559 U.S. at 673; *see also Yahoo! Inc. v. Iverson*, 836 F. Supp. 2d 1007,
17  1011 (N.D. Cal. 2011).

18  While it is true that "failure to mention class arbitration in the arbitration clause itself does
19  not necessarily equate with the 'silence' discussed in *Stolt-Nielsen*," here there is simply no basis to
20  conclude that the parties intended to include class arbitration in their agreement. *See Yahoo!*, 836 F.
21  Supp. 2d at 1011 (quoting *Vasquez v. ServiceMaster Global Holding Inc.*, No. 09-cv-05148-SI, 2011
22  WL 2565574, at *3 (N.D. Cal. June 29, 2011). In *Yahoo!*, the arbitration clause specified that the
23  parties agreed to be bound by the rules of the American Arbitration Association, which in turn
24  permitted class arbitration. *Id.* at 1010-11. Here, the parties' agreement makes no such provision.
25  (*See* Barnum Decl. Ex. B.) The parties were free to include such a provision in their agreement.
26  That they chose not to weighs heavily in favor finding that the agreement is silent on the issue. *See*
27  *Stolt-Nielsen*, 559 U.S. at 682-83.

28  Absent evidence that E*Trade agreed to class arbitration, it is unfair to coerce it to

5

1 participate in proceedings that fundamentally change the nature of the arbitration. *See id.* at 685.
2 Accordingly, the Court finds that the arbitration agreement does not provide for collective
3 arbitration.

**C.    Whether the Agreement Provides for Collective Arbitration is a Question for the Court.**

Next, Mr. Parvataneni contends that the Court should permit an arbitrator to decide whether the arbitration agreement provides for collective arbitration. (Pl.'s Mot. at 4.)

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citations omitted). Absent "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability, the Court should not presume that intention. *Id.* at 944 (internal quotation marks and brackets omitted). Moreover, if an arbitration agreement is silent or ambiguous about who should decide arbitrability, the question should be put to the Court because to do otherwise "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945.

Here, there is no "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability. *See id.* at 944; *Yahoo!*, 836 F. Supp. 2d at 1011. Again, unlike *Yahoo!*, here the parties did not choose to incorporate the rules of the American Arbitration Association – that would have permitted an arbitrator to decide this matter – into their agreement. *See* 836 F. Supp. 2d at 1012. The arbitration agreement itself is completely silent as to the issue of who should decide questions of arbitrability. With no "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability, the Court finds that the arbitrability question is for the Court to decide. *See First Options*, 514 U.S. at 944.

Mr. Parvataneni argues that the arbitration agreement here is drafted so broadly that it necessarily sweeps questions of arbitrability into its ambit. (Pl.'s Mot. at 4-5.) He contends that the parties agreed to submit all disputes arising out of the employment to arbitration, including the question of whether certain questions are arbitrable. (*Id.* at 4.) However, it is well-settled that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to

6

arbitration . . . ." *First Options*, 514 U.S. at 945. Given this arbitration agreement's silence on the issue of arbitrability, it can at most be characterized as ambiguous. Without "clear and unmistakable evidence" that the parties intended an arbitrator to decide questions of arbitrability, the Court finds that this is a question that is properly before the Court. *See id.* at 944.

**D.     The Arbitration Agreement is a Valid PAGA Waiver.**

Finally, Mr. Parvataneni contends that, if the arbitration agreement prevents him from bringing his representative PAGA claims, then it unlawfully exempts E*Trade from PAGA actions. (Pl.'s Mot. at 10.) This argument is foreclosed by *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

**1.     Ruling in *Concepcion***

In the wake of recent Supreme Court precedent, arbitration agreements may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746.

Before the decision in *Concepcion*, governing California law instructed that courts refuse to enforce any contract found to have been unconscionable at the time it was made or to limit the application of any unconscionable clause. *See* Cal. Civ. Code § 1670.5(a). In *Discover Bank*, the California Supreme Court applied this framework to class-action waivers in arbitration agreements and held that a class-action waiver in an arbitration agreement constituted a deliberate scheme to cheat large numbers of consumers of relatively small amounts of money and to protect businesses from responsibility for their own fraud. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (2005), *aff'd sub nom. Laster v. AT&T Mobility LLC*, 584 F.3d 849, 855 (9th Cir. 2009). However, the United States Supreme Court in *Concepcion* specifically found that the FAA preempts California's *Discover Bank* rule and held that courts must compel arbitration even in the absence of the opportunity for plaintiffs to bring their claims as a class action.

**2.     PAGA Waivers are not Categorically Unconscionable.**

Mr. Parvataneni argues that parties cannot, by private consent, agree to waive rights created by the state under PAGA. (Pl.'s Mot. at 13.) However, under the Supremacy Clause, the FAA is

7

"the supreme law of the land." U.S. Const. art. VI. Further, in the wake of *Concepcion*, an arbitration agreement that denies a plaintiff a right of collective action is still a valid agreement. *See* 131 S. Ct. at 1750-51. Thus, it follows that an arbitration agreement that denies a plaintiff the right to pursue a representative PAGA claim is still a valid agreement. *See Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2010) (holding that "the Court must enforce the parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private attorneys general"); *cf. Valle v. Lowe's HIW, Inc.*, No. 11-1489-SC, 2012 WL 4466523, at *2, 3 (N.D. Cal. Aug. 30, 2012) (upholding arbitrator's decision to dismiss plaintiff's representative PAGA claims but permitting him to arbitrate his PAGA claims on an individual basis).

Therefore, the arbitration agreement is not void merely because it may prohibit Mr. Parvataneni from bringing a representative PAGA claim. Mr. Parvataneni may still attempt to vindicate his rights by arbitrating his PAGA claims individually.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS E*Trade's motion to compel arbitration. The parties are ordered to proceed immediately to arbitration of all claims. The Court shall retain jurisdiction to enforce any award. This action is HEREBY STAYED pending completion of such arbitration. The Clerk is directed to close the file for administrative purposes. The case may be reopened for such additional proceedings as may be appropriate and necessary upon conclusion of arbitration. If the matter is resolved by settlement, the parties shall promptly file a dismissal of this action.

**IT IS SO ORDERED.**

Dated: September 24, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE